## PAUL CURTIS *vs.* LUTHER ANGIER.

**A** corporation, authorized to hold land for the purposes of a canal, purchased .and by deed of warranty, constructed their canal across it, and laid out a road on the bank of their canal in the same general direction as, though not entirely coinciding with an old way by which the grantor, who owned an adjacent estate, and other persons, had been accustomed to pass over the land granted; and graded and levelled the new road so as to fit for all such travel, as well as for their own towpath, and built a bridge over their canal so as to preserve the connection of said road with a public highway; and the new road continued for forty years, without interference or objection of the corporation, to be used as the old one had been. *Held*, that if the road was not dedicated to the public, which *it seems* it was, the owner of the adjacent estate had such a right of way by adverse use and possession as raised a presumption of grant from the corporation which they and those claiming under them could not now disturb.

ACTION OF TORT for breaking and entering the plaintiff's close in Medford, being part of the land which was taken by the proprietors of the Middlesex Canal, between 1800 and 1805, for the purposes of their canal, and used by them as a towpath on the northerly bank of the canal until the discontinuance of their canal in 1851, when they made a deed of the premises in question to the plaintiff. The case was submitted to the decision of the court upon a statement of facts, beginning thus:

" In Medford, on the southerly side of Mystic River, are two ancient rangeways or roads, laid out about the time of the first settlement of the town, running from points on or near Mystic River southerly, and parallel or nearly so, at the distance of about a quarter of a mile from each other, and opening in Somerville or West Cambridge into one of the old roads leading from West Cambridge to Boston. These rangeways have always been, and still are, more or less used by the public for passage with carts and carriages, and are still kept open to the public. The easterly of said rangeways connects at its northern extremity with South Street, formerly known as Fish Lane, and in 1828 laid out as a public street. Said Fish Lane had been open and travelled by the public more than sixty years before the date of the alleged trespass. The place where the alleged trespass was committed lies between the two rangeways. Both of said rangeways cross the canal by bridges built by the pro-

prietors of said canal at the time of its first construction, and from that time to the commission of the alleged trespass, or to the discontinuance of said canal, maintained and kept in repair by them. Before said canal was constructed, the westerly of said rangeways, at or near its northerly termination, connected with a way or road which led easterly from that point to Fish Lane, or to the easterly rangeway near the point where it terminated in Fish Lane."

The former owners of the Adams farm, from whom the present owners derived their title, in 1806 conveyed to the proprietors of the canal by deed of warranty a strip of land five rods wide, including the *locus in quo.* All the other material facts appear in the opinion.

*J. G. Abbott & E. Wright,* for the plaintiff

*T. S. Harlow,* for the defendant.

SHAW, C. J.* It appears very clearly that the two ancient rangeways were established highways. It is not the amount or quantity of travel on a road which makes it a public way; but the right which every one has to use it, without encroaching on the right of another. So the road which extended from the northerly terminus of the westerly rangeway to Fish Lane, afterwards laid out as South Street, though not much used, was an ancient public way, and was so recognized by the proprietors of Middlesex Canal, by building and maintaining a bridge over their canal, to connect the western rangeway with the way in question. These ways were important to several estates, amongst which was the Adams farm, represented in this suit by the defendant, as the agent and tenant of the owners.

It appears that when the proprietors of the canal, more than half a century ago, made their canal, they made a road on the north bank of it, in the same general direction with the old road, and coinciding with it to some extent, but not entirely. This road along the north bank of the canal was made much wider than was necessary for a towpath, was graded and levelled so as to fit it for all the species of travel which used to pass over

---

* BIGELOW, J. did not sit in this case.

the old road, and connected with the termination of the western rangeway. From that time to the discontinuance of the canal, it was used not only as a towpath for the canal, but as a road for all the travel going northerly and easterly through the old rangeway, and also by the proprietors of the canal themselves, for the locks and lock-keeper's house half a mile above. This road along the bank of the canal was so used without prohibition, interference or objection on the part of the canal proprietors.

The court are strongly inclined to the opinion that these facts show a dedication of the towpath road along the north bank of the canal, as a substitute for the old road, which it superseded and rendered no longer necessary. They must have a towpath, and it must be next adjoining the canal; some widening and grading made it equally serviceable for a travelled road. They admitted the existence of the old road, and connected the western rangeway with it, by erecting and maintaining a bridge over their canal. If a dedication, it was to all the public uses to which the old road was subject.

But, without going into the peculiar characteristics of a way by dedication, the court are all of opinion that the owners of the Adams house and estate, as against the proprietors of the canal, had acquired a right of way, by adverse use and possession, before the discontinuance of the canal. It appears that the occupants of the Adams house, and owners of the estate, had the free use, enjoyment and possession of the way in question; that it was adverse, uninterrupted and unquestioned, from the time of laying out the towpath road, which affords ample evidence of a grant. The land of the canal proprietors, over which this road was laid, having been subject to the servitude, they could not make any conveyance of their estate, which would extinguish the right of way thus acquired. The plaintiff therefore took his title, subject to that right of way, and had no right to dig away the soil on which it was made, or erect a fence across to obstruct it. The defendant, therefore, acting in the right and by the authority of the owners of the Adams house, was justifiable in removing such fence, and in doing so committed no trespass. *Judgment for the defendant.*